# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERBE USA, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:11-cv-1480-AT |
| BYRNE MEDICAL, INC., | : |
| | : |
| Defendant. | : |

## **ORDER**

This matter is before the Court on Defendant Byrne Medical, Inc.'s motion to dismiss Plaintiff ERBE USA, Inc.'s complaint pursuant to Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure [Doc. 8] and on the parties' Joint Preliminary Report and Discovery Plan [Doc. 14].

## I.  Background[1]

Byrne manufactures and sells endoscopic irrigation systems and disposable irrigation products, including EndoGator Irrigation Tubing and Endo SmartCap

---

[1] As it must when considering a motion to dismiss, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to ERBE, the nonmoving party. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007).

AO 72A
(Rev.8/82)

Tubing. Compl. ¶ 9. The EndoGator tubing set and the SmartCap product are marked to indicate that they are protected by U.S. Patent No. 6,210,322 ("the '322 patent"), which is entitled "ADAPTER FOR THE CONNECTION OF A WATER BOTTLE TO AN ENDOSCOPE" and "relates to delivery tubes for passing the water from a water bottle to the optical head of the endoscopic instrument." Compl. ¶ 38; '322 patent col.1 l.1-18.

About seven years ago, the parties entered into an agreement that allowed ERBE to distribute the EndoGator tube set. *Id.* ¶ 11. On June 30, 2010, Byrne notified ERBE that it was terminating the distribution agreement. *Id.* ¶ 16. Pursuant to the terms of the agreement, ERBE then filed an arbitration proceeding to resolve disputes related to the termination date of the agreement and certain breach of contract claims.[2] *Id.* ERBE and Byrne dismissed the arbitration with prejudice upon agreeing that the distribution agreement would not terminate until July 31, 2011. *Id.*

While investigating how it could continue to supply its customers with similar medical irrigation systems, ERBE discovered that third-party manufacturers and its own research and development team were hesitant to develop a product to replace

---

[2] The two issues addressed in arbitration were (1) whether the distribution would terminate on December 31, 2010, or August 1, 2011, and (2) whether Byrne breached the distribution agreement by selling products to ERBE at a price higher than the lowest price offered to Byrne's other customers. Reply Supp. Mot. Dismiss, Ex. 5 at 4.

AO 72A
(Rev.8/82)

Byrne's irrigation products for fear of infringing the '322 patent. *Id.* ¶¶ 17-18, 20. It also discovered differences between certain claims contained in the '322 patent and the products marked as protected by that patent, and it found prior art it contends disclosed all of the '322 patent claims. *Id.* ¶¶ 24-38, 67-69.

Despite its concerns about infringing the '322 patent, ERBE recently completed development of a tubing set that replaces both the EndoGator tube set and the SmartCap product. *Id.* ¶¶ 22-23. ERBE planned to formally introduce its product at an exposition taking place in May and to begin shipping its product to customers last month. *Id.* ¶ 23.

On May 6, 2011, ERBE filed its complaint, bringing claims for false marking and false advertising and requesting a judgment declaring that the '322 patent is invalid. Byrne moves to dismiss all of the claims, contending that the arbitration settlement agreement precludes the false marking and false advertising claims, which, Byrne argues, are also inadequately pled, and arguing that the Court does not have subject matter jurisdiction over ERBE's patent invalidity claim. Mot. Dismiss at 1-2.

## II.   Discussion

The Court will first consider Byrne's motion to dismiss the false marking and false advertising claims pursuant to Rule 12(b)(6). It will then address Byrne's motion

to dismiss the claim for declaratory judgment of patent invalidity pursuant to Rule 12(b)(1).

### A. False Marking and False Advertising Claims

#### 1. Legal Standard

The purpose of a Rule 12(b)(6) motion is to determine whether the complaint states a claim for relief. In considering a motion to dismiss, the Court must accept the factual allegations in the complaint as true, construe them in the light most favorable to the nonmoving party, and accept all inferences reasonably drawn from those allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316; *Powell v. United States*, 945 F.2d 374, 375 (11th Cir. 1991). To survive a motion to dismiss, a complaint must allege facts sufficient to suggest the required elements of a cause of action. *Twombly*, 550 U.S. at 555; *Watts v. Fla. Intl Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will mere labels and legal conclusions withstand a 12(b)(6) motion to dismiss. *Id.* Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

AO 72A
(Rev.8/82)

**2. Analysis**

**a. Settlement Agreement**

Byrne contends that the arbitration settlement agreement and release bar ERBE's false marking and false advertising claims.[3] Br. Supp. Mot. Dismiss at 11-12 (citing § 11.07 of the distribution agreement, which provides that "any controversy or claim arising out of or relating to this Agreement or breach hereof [that is not resolved by amicable means] shall be settled by arbitration"). Byrne points specifically to paragraph 5 of the settlement agreement, which states that "ERBE hereby discharges and releases Byrne from the Claims." *Id.* at 12. The settlement agreement defines "Claims," in relevant part, as:

> (a) All claims ERBE alleged or could have alleged against Byrne as of the Effective Date <u>in the Arbitration</u>; and . . .
>
> (c) All claims either Party alleged or could have alleged against each other <u>arising from or relating to the Distribution Agreement</u>, including but not limited to claims for damages <u>under the Distribution Agreement</u> and claims that either Party failed to perform <u>as required or allowed under the Distribution Agreement</u>; and

---

[3]"[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted). The Court therefore considers the parties' distribution agreement and settlement agreement in conjunction with this motion to dismiss.

>   (d)     All claims that either Party is liable to the other Party as a result of any action any Party took (or failed to take) <u>arising from or relating to the Distribution Agreement, or the prosecution and defense of the Arbitration</u>.
>
>   "Claims" shall mean and refer to the claims described in this numbered paragraph (including all of its subparts), (1) whether such claims sound in tort, contract, contort, statute, under the common law, or arising from any other duty, obligation, or right, (2) whether they are liquidated, unliquidated, choate, or inchoate, (3) whether they are known or unknown, and (4) shall include all claims arising from acts or omissions prior to the Effective Date.

Settlement Agreement ¶ 9 (emphasis added). Byrne argues that the false marking and false advertising claims are so closely tied to the distribution agreement that ERBE could have alleged them in the arbitration demand, and therefore they are among the claims ERBE disclaimed in paragraph 9(a) of the settlement agreement. *See* Br. Supp. Mot. Dismiss at 17. The Court disagrees.

"A release or settlement agreement is a contract subject to construction by the court" under the state law generally applicable to contracts. *Safe Shield Workwear, LLC v. Shubee, Inc.*, 675 S.E.2d 249, 252 (Ga. Ct. App. 2009) (citation omitted). "The cardinal rule of construction is to determine the intention of the parties." *Id.* When a contract's terms are clear and unambiguous, the court looks to the contract alone to determine the intent of the contracting parties. *Id.* Whether the contract is ambiguous is a question of law for the court. *Id.*

Here, it is clear that the settlement agreement resolved only those issues that were alleged or could have been alleged in the distribution agreement arbitration. *See* Settlement Agreement ¶ 9(a). Disputes do not arise out of or relate to a contract if they are not a foreseeable result of the performance of the contractual duties or "related—with at least some directness—to performance of duties specified by the contract." *Telecom Italia, SpA v. Wholesale Telecomm. Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). Furthermore, a dispute is not "an immediate, foreseeable result of the performance of the contractual duties" and thus not within the scope of an arbitration clause within the contract if "the defendant could have been engaged in the allegedly tortious actions even if it had no contractual relationship with the plaintiff." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1367 (11th Cir. 2008) (punctuation and citation omitted).

It is apparent from the complaint that ERBE discovered Byrne's alleged wrongdoing while investigating alternatives to distributing Byrne's product under the distribution agreement. ERBE also noted in the "Factual Background" section of its demand for arbitration that the EndoGator tube set faced little marketplace competition because Byrne told potential suppliers and customers that it was protected by a U.S. Patent and so indicated on its packaging and in its advertising. Reply Supp. Mot. Dismiss, Ex. 5 at 3-4 & n.2. However, Byrne points to nothing in the distribution

7

agreement that would provide grounds for a finding that the claims in the instant lawsuit *arise out of* or *relate* to the distribution agreement itself and therefore could have been brought during the arbitration required by that agreement. *See* Distribution Agreement § 11.07 (setting out dispute resolution by arbitration.) Byrne could have engaged in false marking and false advertising even if it had no distribution agreement with ERBE, and thus, those claims are not within the scope of the distribution agreement. Consequently, the Court finds that the claims are not precluded by the settlement agreement and declines to grant Byrne's motion on these grounds.

### b. Adequacy of Pleading

#### i. False Marking

Byrne further argues that ERBE failed to plead its false marking claims with sufficient particularity. Br. Supp. Mot. Dismiss at 5-7. Pursuant to 35 U.S.C. § 292, "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public" is subject to a fine of up to $500 for each offense. The two elements of a false marking claim are therefore "(1) marking an unpatented article and (2) intent to deceive the public." *Juniper Networks, Inc. v. Shipley*, __ F.3d __, No. 2010-1327, 2011 WL 1601995, at *4 (Fed. Cir. Apr. 29, 2011). Because intent to deceive the public is an element of false marking, the claim

8

sounds in fraud and therefore must satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at *3; *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011). Consequently, the plaintiff must "state with particularity the circumstances constituting the fraud," including "the specific who, what, when, where and how" of the alleged misconduct. *Juniper Networks, Inc.*, 2011 WL 1601995, at *3-4 (citations omitted). Furthermore, although Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," the pleading must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *In re BP Lubricants USA Inc.*, 637 F.3d at 1311. "[T]he fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent." *Id.* (citation omitted).

Byrne argues that ERBE's false marking pleadings "perfectly parallel[]" the false marking pleadings the Federal Circuit found to be insufficient in *BP Lubricants*, and therefore this Court should likewise dismiss ERBE's pleadings. Reply Supp. Mot. Dismiss at 3. At issue in *BP Lubricants* was whether "the complaint failed to plead with particularity the circumstances of the defendant's alleged intent to deceive the public in falsely marking unpatented articles with an expired patent." *In re BP Lubricants USA Inc.*, 637 F.3d at 1309. Byrne contends that like the plaintiff in *BP*

9

*Lubricants*, ERBE failed to sufficiently plead the factual circumstances of the false marking or facts from which the Court could reasonably infer deceptive purpose and intent. Reply Supp. Mot. Dismiss 3-4.

Byrne mischaracterizes the Federal Circuit's finding with regard to the factual circumstances of the false marking. Byrne contends that ERBE, like the plaintiff in *BP Lubricants*, failed to plead in sufficient detail the specific "who, what, when and where" of the circumstances of the alleged fraud, and therefore, the complaint does not meet the false marking pleading standard. Reply Supp. Mot. Dismiss 3-4. In *BP Lubricants*, the plaintiff alleged in the complaint that BP Lubricants (who) deliberately and falsely marked (how) the packages of at least one of its motor oil products with the number of an expired patent (what) throughout the United States (where), starting on the date the patent expired (when). *In re BP Lubricants USA Inc.*, 637 F.3d at 1309-10. The *BP Lubricants* court, however, made no finding with regard to the sufficiency of the facts pled in support of allegations of the circumstances of the alleged fraud.[4]

Conversely, in the case now before the Court, the complaint alleges that Byrne (who), Compl. ¶¶ 14, 21, knowingly and intentionally falsely marked (how), *id*. ¶ 43, 56, its SmartCap and EndoGator products with the '322 patent (what), *id*., at least at the time of the complaint (when), *id*. ¶¶ 14, 38, 44, 57, on the boxes in which it shipped

---

[4]Tellingly, Byrne provides no pinpoint citation.

the products, on the product packaging, in advertising, and on Byrne's website (how), *id.* ¶¶ 14, 21, 43, 56, in the United States (where), *id.* ¶ 9. Thus, the complaint states a sufficient factual basis for the circumstances of the false marking. *See Juniper Networks, Inc.*, 2011 WL 1601995, at *3-4.

Byrne also asserts—this time, correctly—that in *BP Lubricants*, the Federal Circuit found that the complaint contained insufficient factual detail as to intent. Reply Supp. Mot. Dismiss 4 (citing *In re BP Lubricants USA Inc.*, 637 F.3d at 1313). Byrne is wrong, however, in its assertion that ERBE's intent pleadings are parallel to those in *BP Lubricants* and that therefore ERBE's complaint suffers from the same lack of detail. *See* Reply Supp. Mot. Dismiss 4. In *BP Lubricants*, the plaintiff accused the defendant of false marking because the defendant continued to mark its product as patented after the patent had expired. 637 F.3d at 1309. With regard to intent to deceive, the plaintiff averred simply that "upon information and belief, Defendant knows, or should know (by itself or by its representatives)" that the patent marked on the products "expired and/or do[es] not cover the products to which the marking is affixed," and further that "[a]s a sophisticated company with, upon information and belief, experience applying for, obtaining, and litigating patents, Defendant knows, or reasonably should know, of the requirements of 35 U.S.C. § 292." Reply Supp. Mot. Dismiss at 3-4, Ex. 4 ¶¶ 21-23. The court found that these

11

"generalized allegations" were insufficiently specific to allow it to "reasonably infer the requisite intent." *In re BP Lubricants USA Inc*., 637 F.3d at 1312 (noting further that other allegations could have "set forth facts upon which intent to deceive [could have been] reasonably inferred," such as allegations that the defendant sued a third party for infringement after the patent expired or that it made multiple revisions of the marking after patent expiration).

ERBE's allegations are unlike those in *BP Lubricants* because ERBE does not state simply that Byrne is a sophisticated company and should have known better. Nor are ERBE's false marking claims grounded in circumstances as passive and prone to negligent disregard as an expiration date. ERBE instead makes specific factual statements regarding the '322 patent prosecution history and Byrne's product design. The Court may readily infer from these allegations that the Byrne SmartCap and EndoGator products did not meet the claim limitations of the '322 patent, Byrne knew it, and yet it manufactured products marked as protected by the patent. Thus, the complaint adequately alleges intent and purpose to deceive.

First, ERBE avers that the patent office originally rejected claim 1 of the '322 patent in light of prior art and that to overcome the rejection, claim 1 was amended to "have at least an inner tube extending through an outer tube such that an air annulus is formed between the exterior surface of the inner tube and the interior surface of the

12

outer tube and a permanent fitting affixed to one end of the tubing with a removable adaptor attached to it." Compl. ¶¶ 26-29. It also alleges that the EndoGator set does not have a tube-within-a-tube configuration and that neither the EndoGator set nor the SmartCap product has a removable adaptor. *Id*. ¶¶ 30-31, 33. The Court finds it difficult to believe that Byrne did not know that the marked products it manufactured failed to conform with the patent's one independent claim—particularly when that aspect of the design was specifically highlighted in the patent's prosecution history and purposefully modified to overcome the patent office's rejection.

Second, ERBE alleges that the '322 patent is directed toward a particular tube arrangement and that, despite the fact that both the EndoGator and SmartCap are marked as protected under the '322 patent, the products' tube arrangements differ from one another and from claim 1 of the '322 patent.[5] *Id*. ¶¶ 30-38; '322 patent col.8 l.53-col.9 l.20. It strains credulity to ask the Court to ignore the obvious inferences of intentional misrepresentation where the company that makes *both* differing products nonetheless represents that they both meet the one independent claim contained in the

---

[5]The EndoGator tube set lacks the tube-within-a-tube configuration, and the SmartCap product lacks the removable adaptor. Compl. ¶¶ 30, 32-34.

13

'322 patent. *See id.* ¶¶ 9, 26-38. Consequently, the Court finds that ERBE has alleged facts sufficient to support its claims for false marking.[6]

### ii.     False Advertising

Byrne also contends that ERBE's false advertising claims are insufficiently pled. Br. Supp. Mot. Dismiss at 8-11. Pursuant to 15 U.S.C. § 1125(a), any person who makes a false or misleading description or representation of fact in connection with goods, which misrepresents the nature or characteristics of those goods, "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." To succeed on a false advertising claim under the Lanham Act, "a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Additionally,

---

[6]The Court recognizes Byrne's argument that since the Federal Circuit issued its *BP Lubricants* opinion, some district courts have significantly raised the bar for pleading deceptive intent—in some cases, to the point that the Court suspects only a plaintiff with unusual access to direct evidence typically available only via discovery might successfully state a false marking claim in those jurisdictions. These unpublished opinions are, at most, of persuasive value, and therefore the Court will not expend the resources necessary to painstakingly criticize and distinguish them here.

"[f]ederal patent law bars the imposition of liability for publicizing a patent in the marketplace unless the plaintiff can show that the patentholder acted in bad faith." *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999).

Byrne contends that ERBE has not alleged that Byrne made a false statement in a commercial advertisement, alleged deception of an audience, or shown that the alleged statement was made in bad faith. Br. Supp. Mot. Dismiss at 9. At least one other district court has held that an allegation that a manufacturer falsely claimed in its advertising materials that its product is patented is sufficient to state a false advertising claim under the Lanham Act. *See Blank v. Pollack*, 916 F. Supp. 165, 171 (N.D.N.Y. 1996). Here, ERBE attached an advertisement in which Byrne indicated that the EndoGator tube set was protected by a pending U.S. patent application, and it alleged that, as a result, potential customers of the EndoGator tube set, including ERBE, believed the set was protected by a U.S. patent. Compl. ¶¶ 14-15, 38, Ex. A. It also attached a printout of Byrne's website in which Byrne indicated that the SmartCap product is protected by the '322 patent, and it alleged that as a result of Byrne's marketing, the public, including ERBE, believed the SmartCap product was protected by a U.S. patent. *Id.* ¶¶ 21, 38, Ex. C. Moreover, as discussed above, ERBE pled facts sufficient to allow the Court to reasonably infer that Byrne had the requisite knowledge and intent to deceive when it marked the EndoGator and SmartCap products with the

'322 patent. There is no reason this inference should not apply to Byrne's use of the allegedly misleading mark in its advertising materials as well. Thus, ERBE's false advertising pleadings meet the Lanham Act's "bad faith" requirement. Accordingly, the Court finds that ERBE has alleged facts sufficient to support its false advertising claims.

### B.     Patent Invalidity Claim

Byrne also moves to dismiss ERBE's claim for a declaratory judgment, arguing that the Court lacks subject matter jurisdiction to determine the validity of the '322 patent because ERBE has failed to allege a current controversy. Br. Supp. Mot. Dismiss at 3.

#### 1.     Legal Standard

Where, as here, a defendant asserts a facial attack to jurisdiction, the court must examine whether the complaint has sufficiently alleged subject matter jurisdiction. *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id.* (explaining that in a Rule 12(b)(1) facial challenge, a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised") (citation omitted).

16

AO 72A
(Rev.8/82)

### 2.     Analysis

The purpose of the Declaratory Judgment Act "in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) (citation omitted). Before the Declaratory Judgment Act, a patent holder could engage in threatening "extra-judicial patent enforcement" rather than sue, effectively restricting competitors to a choice between incurring "growing potential liability for patent infringement" or abandoning the potentially infringing activity, which, of course, might not in fact infringe the holder's patent. *Id.* at 1285 (citation omitted). The Act now allows a competitor to "clear the air" in such a situation "by suing for a judgment that would settle the conflict of interests." *Id.* (citation omitted).

Federal courts may not issue advisory opinions, however, and absent a true case or controversy, a complaint for declaratory relief must be dismissed for lack of subject matter jurisdiction. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). For a declaratory judgment action to satisfy the "case-or-controversy" requirement, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (punctuation and citation

omitted). The district court must conduct a "totality-of-the-circumstances test for deciding whether there is indeed an actual controversy." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009) (recognizing that this new, more flexible standard replaced the Federal Circuit's former rule that "there must be either actual infringement or active preparation to infringe accompanied by a reasonable apprehension of imminent suit").

The Court has carefully reviewed the complaint and finds that the allegations supporting ERBE's patent invalidity claim fall short of establishing that a case or controversy exists. ERBE claims it is entitled to bring a declaratory judgment of invalidity because it planned by now to have introduced its own product that would "replace" Byrne's EndoGator and SmartCap products, which Byrne claims are protected under the '322 patent. Opp. Mot. Dismiss at 19; Compl ¶ 22. The complaint, however, provides no description of ERBE's new product or any other grounds upon which the Court might infer that the product even arguably meets the claims asserted in the '322 patent. Furthermore, although ERBE argues in opposition to Byrne's motion to dismiss that Byrne told ERBE it would sue competitors that came "too close" to its patents, Opp. Mot. Dismiss at 19, no such allegation appears in the complaint. Thus, the complaint fails to allege facts showing that ERBE's introduction of its own surgical irrigation system into the marketplace raises an immediate, real and

18

substantial invalidity dispute with regard to the '322 patent. Byrne's motion to dismiss ERBE's claim for declaration of invalidity is therefore due to be granted.

### III.  Conclusion

Byrne's motion to dismiss is hereby **GRANTED in part** and **DENIED in part** [Doc. 8]. ERBE's claims for false marking and false advertising (First through Fourth Claims for Relief) stand, and its claim for declaration of invalidity (Fifth Claim for Relief) is hereby dismissed. ERBE's Motion for Leave to File Surreply [Doc. 16] and Motion for Oral Argument [Doc. 17] do not propose briefing that would further aid the Court in the determinations discussed in this Order and therefore are **DENIED AS MOOT**.

ERBE shall have **FOURTEEN DAYS** after the entry of this Order within which to file an amended claim for a judgment declaring the '322 patent invalid. In light of the foregoing, the Court **REJECTS** the Joint Preliminary Report and Discovery Plan [Doc. 14] and **ORDERS** the parties to submit a revised Joint Preliminary Report and Discovery Plan within **FORTY-FIVE DAYS** of the date of this Order.

**IT IS SO ORDERED,** this 22nd day of July, 2011.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**